■ JOSH SEGAL, Individually and Derivatively on Behalf of LIGHTHOUSE REAL ESTATE ADVISORS, LLC, et al., Respondents, v PAUL COOPER et al., Appellants. [944 NYS2d 65]—

Order, Supreme Court, New York County (Milton A. Tingling, J.), entered April 28, 2011, which denied defendants' motion for summary judgment dismissing the amended complaint, unanimously modified, on the law, to grant the motion as to the third and sixth causes of action, and otherwise affirmed, without costs.

The court properly declined to dismiss plaintiff Segal's breach of contract claim. It is true that "[a] contract cannot be implied in fact . . . where there is an express contract covering the subject-matter involved" (*Miller v Schloss*, 218 NY 400, 406-407 [1916] [emphasis ommitted]). However, the Operating Agreement of Lighthouse Retail Partners L.L.C., which later became plaintiff Lighthouse Real Estate Advisors, LLC (LREA), and the contract alleged in the amended complaint cover different subject matter. Defendants' arguments that there was no breach of contract and that Segal suffered no damages were considered and rejected on a prior appeal (*see Segal v Cooper*, 49 AD3d 467 [2008]).

Dismissal of Segal's fraud claim was also not warranted. As can be seen from his deposition testimony and his affidavit in opposition to defendants' motion, this claim is not based solely on the statements that defendant Cooper allegedly made at a December 2002 meeting; rather, it is also based on the individual defendants' words and conduct after that date. For example, Segal testified that the individual defendants represented that LREA had exclusive rights to market the properties at issue. He also said Cooper told him that he (Cooper) was acting as a representative of LREA when he met with the party that ultimately entered into the leases. These are factual statements, as opposed to mere expressions of future intent.

Although Segal's deposition testimony shows that he did not rely on the alleged misrepresentation (that LREA had an exclusive brokerage agreement for the properties at issue) when he entered into the business transaction with defendants, he was not asked whether he would have continued to work for LREA for three years if he had known that defendant Lighthouse Real Estate Management, LLC (LREM) had the exclusive brokerage. Segal was entitled to rely on his fellow LLC members' statements and actions after LREA was formed (*see*

*Frame v Maynard*, 83 AD3d 599, 602 [2011]; *Andersen v Weinroth*, 48 AD3d 121, 136 [2007]; *Brunetti v Musallam*, 11 AD3d 280, 281 [2004]).

The motion court properly declined to dismiss Segal's unjust enrichment claim. Unjust enrichment is a quasi-contract claim and "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter" (*Clark-Fitzpatrick, Inc. v Long Is. R.R. Co.*, 70 NY2d 382, 388 [1987]). Here, however, LREA's Operating Agreement covers a different subject matter than Segal's unjust enrichment claim.

The record confirms the allegations of the complaint that Segal bestowed a benefit on defendants (*see Segal*, 49 AD3d at 467). However, the record does not demonstrate what benefit LREA, as opposed to Segal, conferred on defendants. Therefore, we dismiss LREA's unjust enrichment claim (sixth cause of action) (*see Wiener v Lazard Freres & Co.*, 241 AD2d 114, 119 [1998]).

Defendants' argument that the original complaint admitted that they "duly earned" the commissions at issue is unavailing; the original complaint was superseded by the amended complaint (*see e.g. Baker v 16 Sutton Place Apt. Corp.*, 2 AD3d 119 [2003]).

LREA's conversion claim (third cause of action) should have been dismissed because LREA did not have a possessory right or interest in the commissions (*see Colavito v New York Organ Donor Network, Inc.*, 8 NY3d 43, 49-50 [2006]). In opposition to defendants' summary judgment motion, Segal admitted that LREM, rather than LREA, had the exclusive brokerage agreement. Therefore, LREA had no right to commissions unless it actually procured a lease (*see Parker Realty Group, Inc. v Petigny*, 14 NY3d 864, 866 [2010]).

The motion court properly declined to dismiss the breach of fiduciary duty claims. It is true that the Operating Agreement states, "The Managers are authorized to manage the affairs of the Company in conjunction with the Managers' other business interests and activities, which may be . . . in direct competition with the business of the Company" and "Any Member may engage in any other business ventures or activities which may be . . . in direct competition with the business of the Company." However, Segal testified that the whole basis of LREA's business was an exclusive agreement to market the properties at issue. Thus, by diverting the exclusive brokerage agreement from LREA to LREM, defendants thwarted the very purpose for

which LREA was formed (*see Pappas v Tzolis*, 87 AD3d 889, 892-893 [2011]). Concur—Mazzarelli, J.P., Saxe, Moskowitz, Renwick and Freedman, JJ.